Bell, J.,
 

 dissenting. The question presented in this ' case being of the utmost importance to the bench, and bar of this state, and finding my thinking totally at variance with the conclusion reached I shall as briefly as possible state the reasons for my dissent.
 

 The facts are substantially as follows:
 

 Kathleen Sebring Overlander died on Jáhuary 19, 1946, and on the 22nd of that month, relator, her surviving spouse, filed an application for letters of ad
 
 *400
 
 ministration on her estate in the court of probate of Mahoning county. The application sets forth that decedent died intestate and that she was a resident of the city of Sebring, Mahoning county, Ohio, at the time of her death. On the same day that court issued letters of administration to relator. Thereafter a proceeding was instituted in the court of probate of Cuyahoga county to require the production of a last will and testament, the admission to probate of such will or the establishment and admission to probate of a lost, spoliated or destroyed will.
 

 Relator filed objections to the jurisdiction of the Cuyahoga county court and motions to dismiss the proceeding. That court, after being fully advised of the proceedings in Mahoning county, overruled the relator’s objections and motions and ordered the taking of testimony bearing on the question of the domicile of Kathleen Sebring Overlander.
 

 Thereupon the instant case was instituted in this court and was submitted upon the petition, a general demurrer thereto and a stipulation.
 

 By the terms of Section 10509-1, General Code, letters of administration shall be granted by the “probate court” of the county in which the decedent was a resident at the time of his death.
 

 The granting of letters of administration by the court of probate of Mahoning county creates the presumption that such court found the decedent was a resident of Mahóning county at the time of her death and further found that all other jurisdictional statutory requirements had been complied with.
 

 .Section 10501-55, General Code, provides:
 

 ■“The jurisdiction acquired by a Probate Court over a matter or proceeding is exclusive of that of any other Probate Court, except when otherwise provided bylaw.”
 

 Hence by the issuance of letters of administration
 
 *401
 
 and the appointment of the decedent’s surviving spouse (relator) as administrator, the court of probate of Mahoning county acquired exclusive jurisdiction over the proceeding to settle decedent’s estate.
 

 Section 10501-55, General Code (and its predecessor, Section 10498), as construed and applied hy this court is dispositive of this case. So far as the writer has been able to ascertain, the prior decisions of this court are all to the effect that, where a court of probate of any county acquires jurisdiction of a proceeding to settle the estate of a decedent, such court has full and ample authority to determine the question of residence or domicile, as well as all other questions involved in the application, and the judgment granting or refusing to grant the application is protected by the same rule as to collateral attack as are judgments of other courts of record. See
 
 Wilberding, Admr.,
 
 v.
 
 Miller,
 
 90 Ohio St., 28, 106 N. E., 665.
 

 In the case of
 
 State, ex rel. Barbee, Exr.,
 
 v.
 
 Allen, Probate Judge,
 
 96 Ohio St., 10, 117 N. E., 13, this court had before it a situation which may be briefly stated as follows:
 

 On May 27, 1916, a paper writing purporting to be the last will and testament of John B. McLean was offered for probate in the court of probate of Fayette county. Objection was made to the jurisdiction of the court on the ground that the decedent was a resident of Franklin county. The objection was overruled and on June 30, 1916, the paper was admitted to probate as the last will and testament of the deceased. On May 31, 1916, a paper writing purporting to be the last will and testament of John B. McLean was offered for probate in the court of probate of Franklin county and was admitted to probate on July 31st of that year. Thereafter an action was brought against Allen as judge of the court of probate of Fayette county to prohibit him from proceeding further with the administra
 
 *402
 
 tion in Fayette county. In denying the writ this court made the following pronouncement in the syllabus:
 

 “1. The Probate Court, vested by the’Constitution with jurisdiction in probate and testamentary matters and recognized as competent to decide on its own jurisdiction, has power to determine whether a will is entitled to probate and whether letters testamentary thereon shall issue.
 

 “2.
 
 When, upon the hearing of an application for the probate of a will and for letters testamentary, the Probate Court finds that the testator at the time of his death was a
 
 resident
 
 of the county in which the application is made, an order or judgment of the court admitting the will to probate and issuing letters testamentary thereon, however erroneous the conclusions of law and fact upon which the judgment or order is based may be, cannot be reviewed or set aside by a superior court in a proceeding in prohibition.” (Emphasis added.)
 

 ■ It should be noted in passing that the
 
 Allen case, supra,
 
 was the outgrowth of an attempt to invoke the jurisdiction of two courts of probate in different counties in the settlement of the estate of a decedent who died testate.
 

 Another controversy involving the settlement of an estate came before this court in the case of
 
 State, ex rel. Taylor, Admr.,
 
 v.
 
 Gregory, Judge,
 
 122 Ohio St., 512, 172 N. E., 365. In that case the court of probate of Franklin county duly appointed one Taylor administrator of the estate of Mary Wise Hawk. On the following day application was made to the court of probate of Delaware county and one Kilbury was appointed to administer the same estate. Thereafter an action in prohibition was instituted in this court against one Gregory, judge of the Delaware county court of probate. In that case this court used the following language:
 

 
 *403
 
 “The Probate Court of Franklin county acquired jurisdiction over the estate' involved in this controversy, and under the provisions of Section 10498, General Code, that jurisdiction is exclusive of any other probate court. ’ ’
 

 This court allowed the writ of prohibition.
 

 Section 10498, General Code, mentioned in the
 
 Gregory case, supra,
 
 is present Section 10501-55, General Code.
 

 The last-mentioned case was the result of an attempt to invoke the jurisdiction of two courts of probate in the settlement of the estate of a decedent who died intestate.
 

 In the case of
 
 State, ex rel. Black et al., Exrs.,
 
 v.
 
 White, Judge,
 
 132 Ohio St., 58, 5 N. E. (2d), 163, paragraph one of the syllabus reads as follows:
 

 “Where the administration of an estate has been lawfully committed to the Probate Court of a particular county, the jurisdiction of such court to settle such estate is exclusive.”
 

 In the opinion, at page 63, the court reiterated the proposition that by the
 
 Gregory case, supra,
 
 it is the established law of this state that the jurisdiction of a court of probate once acquired
 
 over an estate
 
 is exclusive of every other court of probate. By those decisions it is established that where two wills are involved or where two administrations are involved the court of probate first acquiring jurisdiction has jurisdiction exclusive of any other such court.
 

 In the instant case, it is held that, because the proceeding in Mahoning county is to settle the estate of the decedent as an intestate and because the proceeding in the court of probate in Cuyahoga county is to settle the estate of the decedent who it is claimed died testate, a different rule applies.
 

 The conclusion reached by the majority is based upon the proposition the word “resident” as used in
 
 *404
 
 present Section 10509-1, General Code, and the word “domiciled” as used in present Section 10504-15, General Code, are not synonymous.
 

 A brief history of Sections 10509-1, 10504-15 and 10501-55, General Code, might be interesting in view of the previous pronouncements of this court.
 

 Present Section 10509-1, General Code, under vai’ious code numbers has been on the statute books since 1840 and for 100 years the phrase “inhabitant or resident” was contained therein. In 1943 the General Assembly by amendment struck out -the word “inhabitant.” Section 40504-15, General Code, under various code numbers has been on the books since 1902 and has always contained the word “domiciled.” Section 10501-55, General Code, under various code numbers has been on the books since 1853 in essentially the same language. Hence when this court decided the
 
 Wilberding,
 
 the
 
 Allen,
 
 the
 
 Gregory
 
 and the
 
 White cases, supra,
 
 it was dealing with the same statutes containing in the one (Section 10509-1, General Code) the word “resident” and in the other (Section 10504-15, General Code) the word “domiciled.” This court has considered the words
 
 .residence
 
 and
 
 domicile
 
 as synonymous as used in the statutes relating to the settlement of estates.
 

 In the
 
 Allen case, supra,
 
 the court was considering the question of the probate of a will and yet in both the syllabus and the opinion the court used the word “resident,” although at that time the then statute (Section 10520, General Code) with reference to the probate of a will contained the word “domiciled” and nowhere in that section did the word “resident” appear.
 

 It is true that sometimes it is held that the word “resident” and the word “domicile” are not synonymous, but the general rule is that those words are most frequently used synonymously.
 

 
 *405
 
 In 28 Corpus Juris Secundum, 5, Section 2, a, it is said:
 

 “While the terms ‘domicile’ and ‘residence’ are frequently used synonymously, or said to be synonymous, and ‘residence’ and ‘legal residence’ have been defined in language similar to that used in defining ‘domicile,’ ‘domicile’ and ‘residence’ are not, when accurately and precisely used, convertible terms. * * * ”
 

 In Section 2, b, it is said:
 

 “It has been declared that the 'terms ‘residence’ and ‘domicile’ are almost universally used interchangeably in statutes, that ‘residence,’ when used in statutes, is generally interpreted by the courts as meaning ‘domicile,’ but with important exceptions, and that whenever the ternis are used in connection with subjects of
 
 domestic policy, the terms are equivalent, as they also are, generally, where a statute prescribes residence as a qualification for the enjoyment of a privilege, or the exercise of a franchise; and ‘residence’ as used in various particular statutes has been considered synonymous with ‘domicile.’
 
 ” (Emphasis added.)
 

 Abundant authority is quoted by the textwriter in support of those statements.
 

 It” would seem from a reading of the sections of the Probate Code relative to the administration of estates, that the word “resident” as used in Section 10509-1, General Code, and the word “domiciled” as used in Section 10504-15, General Code, are and should be held to be synonymous.
 

 Furthermore this record discloses that the relator, Arlington M. Overlander, the surviving spouse of the deceased, was a resident of Mahoning county, and that being true the domicile of the decedent was also in Ma-honing county. There is ample authority to support the proposition that speaking generally the domicile of the husband is by operation of law the domicile of his wife.
 

 
 *406
 
 In 28 Corpus Juris Secundum, 11, Section 7, it is said:
 

 “Domicile by operation of law is that domicile which the law attributes to a person, independently of his own intention or actual residence. It is consequential, ordinarily resulting from legal domestic relations, as that of the wife arising from marriage, or the relation of parent and child. ’ ’
 

 At page 26, Section 12:
 

 “The mere fact that a husband and wife are living apart does not prevent his domicile from fixing hers; but when he abandons her, or, by his conduct, justifies her in leaving him, she may acquiré a separate domicile.
 

 “The general.rule that the wife’s domicile follows that of the husband is not affected, in the absence of a valid separation as by a judicial decree of separation or divorce, by the mere fact that the husband and wife are living apart.”
 

 Kennan in his work on Residence and Domicile, 444, .Section 238, is also authority for the proposition that the domicile of a husband is the domicile of his wife and that she is not capable of establishing a separate •domicile.
 

 In 17 American Jurisprudence, 619, Section 45, is found this language:
 

 “While the rule as to the domicil of the husband being the domicil of the wife is based partly on the fact that the husband is the ‘bread-winner’ or' wage ■earner of the family and as such is entitled to select the domicil, the fact that in a particular case the wife is the head of the family because of her independent means and supports the family does not entitle her to select the domicil * *•*.”
 

 In my opinion the domicile of the’ decedent as' a matter of law was in Mahoning county and the court of probate of Cuyahoga county is without jurisdiction
 
 *407
 
 to hear testimony on the subject of the domicile of the clecedent which had already been fixed by operation of law.
 

 It would seem that no deceased person in Ohio should be held to have had at the time of his death a residence in one county and a domicile in another so as to authorize two courts of probate to exercise jurisdiction in the settlement of his estate. Such a holding could result in a clash of jurisdictions among courts of probate of the various counties within this state. To avert such a situation was the primary purpose of the passage of Section 10501-55, General Code.
 

 Under the decision in this case it would be possible for the court of probate of Cuyahoga county to find that the domicile of this decedent was in Cuyahoga county and upon proper proof to admit a will to probate in that county. It is also possible f.or the court of probate of Mahoning county to proceed with the administration of the estate of decedent. The Cuyahoga county court of probate has no jurisdiction of the court of probate of Mahoning county or
 
 vice versa.
 
 Each court
 
 coulcl
 
 defy the orders of the other and the result would be another’ law suit to determine which court had jurisdiction.
 

 The statute (10501-55, General Code) and the previous decisions of this court, as well as orderly pro- • cedure, require that the demurrer should be overruled and the writ allowed.